## BOSQUE *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 147. Submitted January 29, 1908.—Decided March 23, 1908.

Under the Treaty of Paris of 1898, between the United States and Spain, a Spanish resident of the Philippine Islands, who left there in May, 1899, without making any declaration of intention to preserve his allegiance to Spain and remained away until after the expiration of eighteen months after the ratification of the treaty continued to be a Spaniard, and did not, even though he intended to return, become a citizen of the islands under the new sovereignty, and therefore is not eligible to admission to practice at the bar under the rules established by the military and civil authorities of the Philippine Islands.

The laws applicable to other foreigners referred to in Article XIX of the treaty referred not to Spanish laws but to the laws to be enacted by the new sovereignty. Spaniards only became foreigners after the cession.

The right to practice law is not property within the protection of Article VII of the treaty.

1 Philippine Rep. 88, affirmed.

PLAINTIFF in error applied to the Supreme Court of the Philippine Islands in February, 1901, to be admitted to practice law in the Philippine courts. His petition was supported by various certificates as to professional qualifications and good character, and set forth that petitioner was a graduate of the University of Manila; and practiced law in the Philippine Islands from 1892 until the cessation of the Spanish courts; "that he is of good character, and has not been inscribed in the record of Spanish nationality, in consequence whereof I have lost this, in accordance with the provisions of the Treaty of Paris, and therefore I am neither a subject nor citizen of any foreign government, and consequently, in my opinion, have the condition required by General Order No. 29, July 19, 1899, of the United States Military Government in these islands for continuing the practice of my profession."

July 27, 1901, the petition was denied by the Supreme Court, without opinion, on the ground that the applicant "does not

possess the political qualifications required by law for the practice of his profession in the Philippine Archipelago."

Plaintiff subsequently filed a petition for rehearing, accompanied by additional certificates and affidavits as to his professional and personal reputation. In this petition he claimed to be entitled to practice his profession under Article IX of the Treaty of Paris and under § 13 of the Code of Civil Procedure, which had been enacted since the date of his first petition.

The petition for rehearing was denied by the court in an opinion rendered by the Chief Justice, 1 Philippine Rep. 88, which held that petitioner had not lost his Spanish nationality, but was a Spanish subject upon an equal footing with other foreign residents who were not entitled to practice the legal profession under the law, either prior or subsequent to the Treaty of Paris.

In January, 1906, plaintiff in error presented to the court the following motion:

"Appears Juan Garcia Bosque and asks that the Honorable Supreme Court be pleased to declare that the petitioner has a right to practice as an attorney at law in the Philippines before all courts. This motion is founded upon the accompanying affidavit."

The affidavit referred to stated that the affiant, on April 10, 1899, and for eight years immediately prior thereto, had practiced law continuously before the courts of the islands. The Supreme Court overruled the motion, and thereupon plaintiff sued out this writ of error.

*Mr. Edgar W. Camp* for plaintiff in error:

The qualifying clause, in the Treaty of Paris, "being subject in respect thereof to such laws as are applicable to other foreigners," is not conclusive against the right to continue the practice of his profession as claimed by plaintiff in error, because, first, there is nothing in the context of the article quoted nor elsewhere in the treaty to warrant such a construction; secondly, because no such intention is to be imputed to

the framers of the treaty, for it were wholly unnecessary to specify rights which any and all foreigners enjoy, and wholly unjust to reduce to naught by the mere stroke of a pen all the rights incident to citizenship created under the flag of the former sovereign; and, lastly, even though such a construction be admissible there existed at the time of the ratification of the treaty no law disqualifying foreigners from becoming members of the bar in the Philippine Islands. Plan of Studies (Plan de Estudios) of 1836; Royal Decree of July 26, 1853; Vol. 5, Diccionario de Alcubilla, p. 423; Same, Vol. 6, p. 798; Vol. 1, Diccionario de Berriz (1888), p. 1341; Diccionario de Alcubilla, p. 873, (Vol. 6); Vol. 3, p. 348; Vol. 5, p. 428; Vol. 3, p. 357; Vol. 2, p. 566.

The Supreme Court of the Philippines has neither power, jurisdiction nor authority to render in any proceeding had in this matter, a decision the effect of which would be to deprive plaintiff in error of the right to practice his profession. Sections 21 to 25 of the Code specify the only grounds upon and the only manner in which a lawyer may be deprived of the right to practice his profession. As well might the Philippine Supreme Court have declared that plaintiff in error was disqualified to practice because he professed a certain religious belief as to have assigned the reasons it did for such alleged disqualification. There can, therefore, be no question of *res adjudicata* herein.

The right of plaintiff in error to practice his profession is a vested right of which he may be deprived only by due process of law. For the proper exercise and enjoyment of this right the recognition by the Insular Supreme Court, in the manner and form herein prayed, is essential. *Cummings* v. *State of Missouri*, 4 Wall. 356; *Ex parte Garland*, 4 Wall. 366; *Ely's Administrator* v. *United States*, 171 U. S. 220–223; *Smith* v. *United States*, 10 Peters, 330; *Soulard* v. *United States*, 4 Peters, 511; *Strother* v. *Lucas*, 12 Peters, 411; *Bryan* v. *Mennett*. 113 U. S. 179.

And in Article VIII (2nd par.) of the Treaty of Paris is

found an express declaration that the relinquishment or cession of sovereignty "cannot in any respect impair the property or rights which by laws belong to the peaceful possession of property of all kinds . . . of private individuals of whatsoever nationality such individuals may be."

*The Solicitor General* for United States:

Plaintiff in error did not become a citizen of the Philippine Islands under the new sovereignty, but continued to remain a Spaniard. His Spanish nationality could only be lost by continuous residence in the islands and failure to declare his intention of retaining it within the time specified (Art. IX, Treaty of Paris, 30 Stat. 1754). He was absent from the islands during the whole of the period allowed for making such declarations, and remained away for more than a year and a half. It makes no difference that he intended to return; it was not necessary in order to retain his Spanish nationality that he should remain away permanently.

As a Spaniard, he is not entitled to practice law in the Philippines. Under the Spanish law foreigners were not allowed to practice the legal profession in Spain and her colonies. Royal Order of July 26, 1853; Diccionario de Alcubilla, Vol. 5, p. 423; Law of Public Instruction, Art. 96, *id.*, Vol. 6, p. 798; decree of February 6, 1869, Alcubilla, Vol. 6, p. 873; Art. 25, Constitution of 1869; Art. 27, Civil Code of Spain; Royal Orders of October 10, 11, 1879, Alcubilla, Vol. 6, pp. 1135–1136. That point is immaterial, however, because the provision in Article IX of the Treaty of Paris that Spanish subjects in the Philippines shall have the right to carry on their professions, etc., subject to "such laws as are applicable to other foreigners" refers to the laws enacted by the new sovereignty. Spaniards were not "foreigners" at the time of the treaty, but only became so after the cession of the islands, and it is evident that the words meant such laws as *shall be* applicable to other foreigners.

Under the laws and regulations on the subject, put in force

in the Philippines first by the military and then by the civil authorities, plaintiff is not entitled to the privilege which he seeks. General Orders, No. 29, series of 1899, §§ 2–6; Philippine Code of Civ. Pro., §§ 13, 15, 19; 1 Pub. Laws, p. 378. The explicit reservation as to aliens runs through all the laws and regulations, making it clear that the intention was and had been from the first to require all members of the bar to be either citizens of the United States or those enjoying the status of natives of the Philippines, and to exclude all foreigners from the legal profession in the islands.

The effect of the decision of the Philippine court was not to deprive plaintiff of the right to practice his profession. The privilege ceased by virtue of the stipulations of the treaty of Paris and the subsequent laws and regulations of the new sovereignty. Those sections of the Code which prescribe the grounds upon which a lawyer may be deprived of the right to practice relate to the removal or suspension from the bar of attorneys already practicing, and have no application to the case of one who has been denied admission to practice at all

The right claimed by plaintiff is not a vested or property right. *Ex parte Garland,* 4 Wall. 333; *Bradwell* v. *United States,* 16 Wall. 130; *Languille* v. *State,* 4 Tex. App. 312; *State* v. *Gazley,* 5 Ohio, 14; *Cohen* v. *Wright,* 22 California, 293; *Sprayberry* v. *Atlanta,* 13 S. E. Rep. 197. The property rights intended to be protected by the stipulation in the eighth article of the Treaty of Paris do not relate to the rights connected with trades and professions. As to definition of *propiedad,* used in the Spanish text of the treaty; see 4 Escriche, 736.


MR. CHIEF JUSTICE FULLER, after making the foregoing statement, delivered the opinion of the court.

Plaintiff in error contends: (1) That his right to practice law in the Philippine Islands was expressly guaranteed by Article IX of the Treaty of Paris and recognized by § 13

of the Philippine Code of Civil Procedure; (2) That the Supreme Court of the Philippine Islands had no power, jurisdiction or authority to deny or deprive a lawyer of his right to practice his profession, except for the reasons and in the manner provided in the Civil Code; (3) That plaintiff in error's right so to practice was a vested right, of which he could be deprived only by due process of law.

Article IX of the Treaty of Paris, 30 Stat. 1754, provided:

"Spanish subjects, natives of the peninsula, residing in the territory over which Spain by the present treaty relinquishes or cedes her sovereignty, may remain in such territory or may remove therefrom, retaining in either event all their rights of property, including the right to sell or dispose of such property or of its proceeds; and they shall also have the right to carry on their industry, commerce and professions, being subject in respect thereof to such laws as are applicable to other foreigners. In case they remain in the territory they may preserve their allegiance to the crown of Spain by making, before a court of record, within a year from the date of the exchange of ratifications of this treaty, a declaration of their decision to preserve such allegiance; in default of which declaration they shall be held to have renounced it and to have adopted the nationality of the territory in which they may reside.

"The civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress."

The record shows that plaintiff in error left the Philippines for Europe on May 30, 1899, and remained away until January 11, 1901. In the affidavit accompanying his petition for rehearing he states that the reasons for his departure from the islands were the unsettled conditions prevailing there and the state of his health; that, while abroad he lived in France and Spain, residing for the most part in Barcelona; that he did not return sooner to the Philippines because of newspaper reports as to personal unsafety in Manilla. In his first petition he

claims to have lost his Spanish nationality because he had not made the necessary declaration of intention to preserve his allegiance to Spain, but that requirement was meant only for those who remained in the territory, and was not necessary in his case, since he removed from the islands.

In the opinion of the Philippine Supreme Court he carried his Spanish nationality with him on his departure, and it could only be lost by continuous residence in the islands and failure to declare his intention of retaining it within the time specified. But plaintiff was absent from the Philippines during the whole of the period allowed for making such declaration, and remained away several months after its expiration. It follows that he did not become a citizen of the islands under the new sovereignty, but that he continued to remain a Spaniard. The fact that he intended to return does not affect this conclusion. It was not necessary in order to retain his Spanish nationality that he should remain away permanently, and he was absent for more than a year and a half.

The question whether aliens were permitted to practice law in Spain and her colonies is elaborately argued, but it is quite unnecessary to pass upon it, since it is manifest that the words in Article IX of the treaty, "such laws as are applicable to other foreigners," referred not to the Spanish law, but to the laws enacted by the new sovereignty. Spaniards only became "foreigners" after the cession of the islands, and it is obvious that the words meant such laws as shall be applicable to other foreigners.

We think it evident that plaintiff under the laws and regulations on the subject put in force in the Philippines, first by the military and then by the civil authorities, was not entitled to the privilege which he sought.

On July 19, 1899, the military governor promulgated, in respect to the admission of lawyers, certain regulations, known as "General Orders, No. 29, Series of 1899," § 2 of which provides as follows:

"Any resident of the Philippine Islands, *not a subject or*
VOL. CCIX—7

*citizen of any foreign government,* of the age of 23 years, of good moral character, and who possesses the necessary qualifications of learning and ability, is entitled to admission as attorney and counselor in all of the courts of these islands."

By § 3 every applicant is required to produce satisfactory testimonials of good moral character : and to undergo a strict examination in open court by the justices of the Supreme Court. If upon examination he is found qualified he shall be admitted to practice in all the courts of the Philippine Islands, and a certificate of the record of the court's order to that effect shall be given him, which certificate shall be his license. (Sec. 4.) Section 5 is as follows:

" Every resident of these islands, *not a citizen or subject of any foreign government,* who has been admitted to practice law in the Supreme Court of the United States, or in any Circuit Court of Appeals, Circuit Court or District Court thereof, or in the highest court of any State or Territory of the United States, may be admitted to practice in the courts of these islands upon the production of his license. Likewise all persons duly accredited as lawyers in the Philippine Islands on the 31st day of January, 1899, who are residents of said islands, *and not subjects or citizens of another government,* may be admitted as attorneys and counselors in all the courts of the islands: *Provided,* that all applicants under this section shall furnish satisfactory evidence of good moral character and professional standing and take the prescribed oath: *And provided further,* That the court may, if it deems advisable, examine the applicant as to his qualifications."

Every person upon admission must take an oath of allegiance to the United States. (Sec. 6.)

It is conceded that plaintiff did not become a member of the bar under the provisions of this law.

General Orders, No. 29, was followed by Act No. 190 of the Philippine Commission, being the Code of Civil Procedure for the Philippine Islands (1 Pub. Laws, p. 378), § 13 of which is as follows:

"The following persons, *if not specially declared ineligible,* are entitled to practice law in the courts of the Philippine Islands:

"1. Those who have been duly licensed under the laws and orders of the islands under the sovereignty of Spain or of the United States and are in good and regular standing as members of the bar of the Philippine Islands at the time of the adoption of this code.

"2. Those who are hereafter licensed in the manner herein prescribed."

It will be perceived that the applicants must be "in good and regular standing as members of the bar of the Philippine Islands *at the time of the adoption of this code.*" This description does not apply to plaintiff in error. The Civil Code was enacted August 7, 1901, to take effect September 1, 1901. He had been denied permission to practice law by the Supreme Court of the Philippines on July 27, 1901, upon the ground that he did not possess the political qualifications required by law. He was not, therefore, at the date of the adoption of the code in good and regular standing as a member of the bar.

It is true § 13 declares "those who have been duly licensed under the laws and orders of the islands, under the sovereignty of Spain," etc., are entitled to practice law, but that applies only to persons "not specially declared ineligible," and plaintiff in error was declared ineligible because a citizen or subject of a foreign government.

Reference may well be made in this connection to § 14 of the act, which reads:

"Any resident of the Philippine Islands, *not a subject or citizen of any foreign government,* of the age of twenty-three years, of good moral character, and who possesses the necessary qualifications of learning and ability, is entitled to admission as a member of the bar of the islands and to practice as such in all their courts."

Section 19 provides for the admission without examination of any resident, *not a citizen or subject of any foreign government,*

who has been admitted to practice in any of the courts of the United States.

It seems clear from the provisions of General Orders, No. 29, and of the code, that the intention was, and has been from the first, to require all members of the bar to be either citizens of the United States or those enjoying the status of natives of the Philippines, and to exclude all foreigners from the legal profession in the islands.

If it be conceded that plaintiff in error possessed the privilege of practicing his profession in the islands at the time Spain surrendered her sovereignty over them, the enjoyment of that privilege ceased by virtue of the stipulations of the Treaty of Paris and the subsequent laws and regulations of the new sovereignty inconsistent therewith; and the effect of the decision in the present instance was not to deprive plaintiff in error of that privilege. Counsel for plaintiff in error cite various sections of the code which prescribe the grounds upon which a lawyer may be deprived of the right to practice, but they relate to the removal or suspension from the bar of attorneys already practicing, and have no application to the case of one who has been denied admission to practice at all.

The eighth article of the Treaty of Paris declares that the cession of sovereignty "cannot in any respect impair the property rights which by law belong to the peaceful possession of property of all kinds," etc., but that stipulation does not relate to the rights connected with trades and professions. The word "propiedad" used in the Spanish text is defined by Escriche as the right to enjoy and dispose freely of one's things in so far as the laws do not prohibit it. 4 Escriche, 736. The same word appears in Article IX, providing that Spanish subjects may retain, whether they remain or remove from the territory, "all their rights of property, including the right to sell or dispose of such property or of its proceeds." Clearly the right to practice law was not referred to as "property" there, and they are followed by the words "and they shall also have the right to carry on their industry, commerce and professions,

being subject in respect thereof to such laws as are applicable to other foreigners."

We concur with the conclusions of the Supreme Court of the Philippines, and its judgment is

*Affirmed.*